# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-5294-17T1
                A-5295-17T1

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

      Plaintiff-Respondent,

v.

L.Z.I. and S.T.W.,

      Defendants-Appellants,

and

W.S.M.,

      Defendant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF Y.S.Q.M.
and Si.T.W.,

      Minors.

_____

Submitted July 8, 2019 – Decided July 12, 2019

Before Judges Yannotti and Haas.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket No. FG-07-0207-17.

Joseph E. Krakora, Public Defender, attorney for appellant L.Z.I. (Robyn A. Veasey, Deputy Public Defender, of counsel; Bruce Pozu Lee, Designated Counsel, on the briefs).

Joseph E. Krakora, Public Defender, attorney for appellant S.T.W. (Dianne Glenn, Designated Counsel, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Jason Wade Rockwell, Assistant Attorney General, of counsel; Lisa Doreen Cerasia, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minors (Rachel E. Seidman, Assistant Deputy Public Defender, of counsel and on the brief).

PER CURIAM

In these two consolidated cases, defendants L.Z.I.[1] and S.T.W. appeal from the June 29, 2018 judgment of guardianship terminating (1) L.Z.I.'s parental rights to her two children, Y.M. (Yanni), born in August 2012, and S.W.

---

[1] We refer to the adult parties by initials, and to the children by fictitious names, to protect their privacy. R. 1:38-3(d)(12).

(Sam), born in July 2013, and (2) S.T.W.'s parental rights to Sam.[2] Defendants contend that the Division of Child Protection and Permanency (Division) failed to prove each prong of N.J.S.A. 30:4C-15.1(a) by clear and convincing evidence. The Law Guardian supports the termination on appeal as it did before the trial court.

Based on our review of the record and applicable law, we are satisfied that the evidence in favor of the guardianship petition overwhelmingly supports the decision to terminate defendants' parental rights. Accordingly, we affirm substantially for the reasons set forth by Judge Nora J. Grimbergen in her thorough and thoughtful fifty-one-page written decision rendered on June 29, 2018.

We will not recite in detail the history of the Division's involvement with defendants. Instead, we incorporate by reference the factual findings and legal conclusions contained in Judge Grimbergen's decision. We add the following comments.

The Division assumed custody of Yanni and Sam from L.Z.I. in March 2016 after L.Z.I. stabbed her paramour in the face with a fork in the presence of

---

[2]  The judgment also terminated the parental rights of W.S.M. to Yanni. However, W.S.M. has not filed a notice of appeal from that determination and, therefore, he is not a party to this appeal.

the children.  Because L.Z.I. was incarcerated for approximately one month, the Division removed the children from L.Z.I., and placed Yanni in a resource home. S.T.W. assumed custody of Sam.  Less than three weeks later, however, S.T.W. was arrested and charged with aggravated assault, unlawful possession of a weapon, and possession of a weapon for an unlawful purpose.  Therefore, the Division again took custody of Sam.  Both Yanni and Sam have remained in the care of the Division since that time.

Between March 2016 and the guardianship trial in May 2018, the Division provided multiple opportunities for L.Z.I. to address her parenting deficits and domestic violence issues.  However, despite the Division's intervention, L.Z.I. was unable to overcome the deficiencies that rendered her unable to safely parent Yanni and Sam.  She failed to attend parenting classes, missed a number of visits with the children and, in February 2018, moved to South Carolina without providing any contact information to the Division.  L.Z.I. did not return to New Jersey until shortly before the guardianship trial began.

S.T.W. was convicted of the aggravated assault and weapons offenses, and sentenced to five years in prison.  He remains incarcerated, and is not eligible for parole until July 2020.

Both Yanni and Sam have behavioral issues, and have undergone therapy. Yanni is currently in a resource home and his resource parent is committed to adopting him. Because of the severity of his behavioral problems, Sam has not yet found a similar placement opportunity, and the Division's plan for Sam is select home adoption.[3]

L.Z.I. and S.T.W. did not testify at the trial. The Division's expert psychological and bonding expert, Dr. Alison Winston, evaluated both defendants. Dr. Winston opined that L.Z.I. "exhibit[ed] low levels of motivation for treatment and self-improvement[,]" and concluded that L.Z.I.'s "pattern of irresponsibility and emotional immaturity [] would interfere with her ability to safely parent her children." While L.Z.I. has "a strong and positive affectionate bond" with the children, Dr. Winston stated that it "does not rise to the level of a secure emotional attachment." Dr. Winston also found that L.Z.I. was "incapable of providing her [children] with the permanency [they] needed."

Dr. Winston opined that Yanni perceives his resource parent as his psychological mother and is developing "a strong and secure emotional

---

[3] Select home adoption refers to "a process that includes looking for an adoptive home in New Jersey and registering the child on the national adoption exchange." N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 98 (2008).

A-5294-17T1

attachment" with her. Therefore, Dr. Winston stated that separating Yanni from his resource parent "would cause him serious and enduring emotional harm."

As for S.T.W. and Sam, Dr. Winston opined that Sam is "incapable of forming a strong and secure emotional attachment to anyone" because he may suffer from reactive attachment disorder. Dr. Winston stated that Sam will need consistent therapy and a stable caregiver to overcome this condition. Because S.T.W. simply cannot provide this stability, Dr. Winston agreed that select home adoption for the child should be pursued.

S.T.W. provided the testimony of Dr. Kenneth McNiel, an expert in psychology and bonding. Dr. McNiel recommended that if S.T.W. was "able to resolve his current criminal charges, he should be considered a viable candidate for custody of [Sam] once he is released from jail, secures stable employment, and a safe and appropriate residence." However, Dr. McNiel based this recommendation upon his belief that S.T.W.'s release from prison was imminent because S.T.W misrepresented his actual custody status to the doctor. Therefore, Judge Grimbergen was unable to credit Dr. McNiel's testimony on this point.

In her extensive opinion, Judge Grimbergen reviewed the evidence presented at the five-day trial, and concluded that (1) the Division had proven

all four prongs of the best interests test by clear and convincing evidence, N.J.S.A. 30:4C-15.1(a); and (2) termination of defendants' parental rights was in the children's best interests. In this appeal, our review of the trial judge's decision is limited. We defer to her expertise as a Family Part judge, Cesare v. Cesare, 154 N.J. 394, 413 (1998), and we are bound by her factual findings so long as they are supported by sufficient credible evidence. N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007) (citing In re Guardianship of J.T., 269 N.J. Super. 172, 188 (App. Div. 1993)).

After reviewing the record, we conclude that Judge Grimbergen's factual findings are fully supported by the record and, in light of those facts, her legal conclusions are unassailable. We therefore affirm substantially for the reasons that the judge expressed in her well-reasoned opinion.

In so ruling, we reject defendants' contentions that they should have been given more time to demonstrate that they could safely parent their children at some undefined point in the future. Children are entitled to a permanent, safe and secure home. We acknowledge "the need for permanency of placements by placing limits on the time for a birth parent to correct conditions in anticipation of reuniting with the child." N.J. Div. of Youth & Family Servs. v. C.S., 367 N.J. Super. 76, 111 (App. Div. 2004). As public policy increasingly focuses on

7

a child's need for permanency, "[t]he emphasis has shifted from protracted efforts for reunification with a birth parent to an expeditious, permanent placement to promote the child's well-being." Ibid. (citing N.J.S.A. 30:4C-11.1). That is because "[a] child cannot be held prisoner of the rights of others, even those of his or her parents. Children have their own rights, including the right to a permanent, safe and stable placement." Ibid.

The question then is "whether the parent can become fit in time to meet the needs of the children." N.J. Div. of Youth & Family Servs. v. F.M., 375 N.J. Super. 235, 263 (App. Div. 2005); see also N.J. Div. of Youth & Family Servs. v. P.P., 180 N.J. 494, 512 (2004) (indicating that even if a parent is trying to change, a child cannot wait indefinitely). After carefully considering the record, Judge Grimbergen reasonably determined that neither defendant was able to parent the children, and would not be able to do so for the foreseeable future. Under those circumstances, we agree with the judge that any further delay of permanent placement would not be in the best interests of the children.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION